RIEGLER v. TRIBUNE ASS'N et al.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. MASTER AND SERVANT—NEGLIGENCE OF SERVANT — LIABILITY OF MASTER—
    DISOBEDIENCE OF INSTRUCTIONS.
      Where a servant engaged in cleaning machinery with benzine, who was instructed to put the benzine in a can after he got through with it, threw the benzine out of the window, onto the roof of another building, thereby injuring a third person, the master was liable; the act being committed by the servant while engaged in the prosecution of the master's business.

2. APPEAL—ERROR CURED.
      Error in admitting incompetent evidence is cured by instructing the jury to disregard it.
      Van Brunt, P. J., and McLaughlin, J., dissenting.

Appeal from trial term, New York county.

Action by Charles Riegler against the Tribune Association and another. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Merritt E. Haviland, for appellants.
Gilbert D. Lamb, for respondent.

PATTERSON, J. In this action, which was brought to recover damages for personal injuries, the plaintiff had a verdict against the defendants, the Tribune Association and one John A. Glennon, and from the judgment entered on that verdict, and from an order denying a motion for a new trial, they separately appeal.

So far as Glennon is concerned, the case may be readily disposed of. It being proven that the cause of the injuries was the direct act of Glennon, his responsibility was fixed, and there was nothing else left for the jury, virtually, than to assess damages as to him. But, with respect to the Tribune Association, the question arises as to its liability for Glennon's act. The circumstances under which the plaintiff was injured may be recited briefly: He was a plumber or roofer, engaged in working on the roof of the Herold Building, which adjoins that of the Tribune Association. He was lawfully on that building. In his work he used a plumber's stove or furnace, in which was a fire to heat a soldering iron. While thus engaged at work, benzine was thrown upon him and was scattered about the roof, some of it coming in contact with the furnace. It was ignited, the plaintiff was enveloped in the flame, and was severely burned. Glennon was an employé of the Tribune Association. On the day and immediately before the accident occurred, he, in the course of his employment, was engaged in cleaning parts of the machinery and types used by the association in the composing department of its newspaper. Benzine was the substance provided and used for cleaning and washing matrices,— part of the equipment of certain printing machines. The method of using the benzine seems to have been to take a certain quantity from a large can and put it in a shallow pan, then to take the matrices from the machine and wash them in benzine, after which the matrices were returned to the machine, and what benzine was left was to be taken back and put in another can, that it might be subsequently used for the purpose of cleaning type. Glennon's instructions were to use the benzine in that manner. On the day on which the plaintiff was injured, Glennon plainly disobeyed his instructions; for, after he had cleaned the matrices by putting them in the benzine contained in the shallow pan, he threw the contents of that pan out of a window overlooking the roof of the Herold Building, and that was done immediately before the plaintiff was burned.

It is claimed by the association at the outset that there is no direct proof connecting the injuries to the plaintiff with the benzine that was thrown out of the window by Glennon. There is no testimony of any eyewitness making this direct connection, but there are abundant circumstances from which the jury could infer, and were entitled to infer, that the benzine which was ignited by the furnace flame and burned the plaintiff came from the Tribune Association Building, and could not have come from any other place at the time of this occurrence.

It is argued that the plaintiff's right of recovery may be maintained upon the proposition that the Tribune Association is liable in this action without any further proof of negligence than the fact that

this dangerous substance was thrown or fell or escaped from its building to and upon adjoining property, where the plaintiff had a right to be. It is unnecessary to consider that aspect of the case. The action was brought, tried, and went to the jury upon the theory of responsibility of an employer for the act of its servant, and there is enough in the record to sustain the verdict on it. The general principle of liability on that theory is very plain. An employer is liable in an action for the negligence of a servant while that servant is engaged in the business of the master, "however contrary to the master's wishes such negligence may be." The cases are so numerous, and the principle is so thoroughly under-stood, that the master is·liable for the negligence of the servant in doing the master's business, that it is unnecessary to refer at length to the adjudicated cases. The only question here is whether Glennon was engaged in the business of the master when he committed this wrongful act, resulting in the injuries to the plaintiff. That he was so engaged seems to be indisputable. He was furnished with the benzine to clean parts of the machinery, and it was his duty to use that benzine in the shallow pan, and to empty it from the pan. His act of emptying the benzine was as much a part of his duty as it was to use it. Instead of pouring it into another can, he emptied it out of a window, and it fell upon adjoining property. He was just as much engaged in the course and scope of his employment in doing this as in any other detail of the work he was hired to perform. He was acting in disobedience of his master's orders, but nevertheless it was in the prosecution of his master's business; and that is the test, and not whether it was done in accordance with the master's instructions. What was said in Geraty v. Ice Co., 16 App. Div. 174, 44 N. Y. Supp. 659, may appropriately be repeated here:

"If the act were one which, continued until the termination, would have resulted in carrying out the object for which the servant had been employed, the master would be liable for whatever negligence might take place during its performance. although the servant in doing it was not obeying the instructions of the master, although he had deviated from the route (directions) prescribed by the master for the purpose of doing some act of his own, but yet with the intention at the same time of pursuing his master's business."

Here the evidence shows that the emptying of this pan was in order that it might be in fit condition to be put away after use, and the jury were fully justified in finding that the act of Glennon was committed while he was engaged in the furtherance of his employer's business. It is claimed that irrelevant testimony of a character prejudicial to the Tribune Association was admitted on the trial. It related to benzine having been thrown from the Tribune Association windows on other occasions, and that the jury were thus allowed to infer that this fluid came from the Tribune Association composing rooms. That evidence was objected to, and should not have been admitted; but the judge instructed the jury to disregard it, at the request of the defendant's counsel. That cured the error. Holmes v. Moffat, 120 N. Y. 159, 24 N. E. 275; Marks v. King, 64 N. Y. 628; Platner v. Platner, 78 N. Y. 90; Gall

v. Gall, 114 N. Y. 109, 21 N. E. 106. As there was sufficient to support this verdict without that testimony, it cannot be said that the jury must have been, or could have been, influenced by it.

The judgment and order must be affirmed, with costs.

O'BRIEN, J., concurs.

INGRAHAM, J. I concur in the affirmance of this judgment. The liability of the defendants depended not upon negligence, but upon the principle that, where one without lawful right or permission injures his neighbors by casting material upon his neighbors' property, he is liable absolutely for the damages, irrespective of the question of care and negligence. This rule is well settled in this state by a long line of authorities. Hay v. Cohoes Co., 2 N. Y. 159; Tremain v. Same, Id. 163; Mairs v. Association, 89 N. Y. 498; Jutte v. Hughes, 67 N. Y. 267; Heeg v. Licht, 80 N. Y. 581; McKee v. President, etc., 125 N. Y. 353, 26 N. E. 305. In this case the plaintiff was working upon the adjoining building, and the defendant, "having no right to invade the premises, which, for the purpose of this case, were in the possession of the plaintiff, it matters not whether or no he made his invasion without negligence." St. Peter v. Denison, 58 N. Y. 416. That the defendant the Tribune Association was liable for the act of Glennon is clear. He was engaged in the prosecution of the business of the master which the master employed him to do, and the master is responsible for the wrongful act of the servant causing injury to a third person, whether the act was one of negligence or positive misfeasance, provided the servant was at the time acting for the master and within the scope of the business intrusted to him. This is so, although the servant departs from the private instructions of the master, if still he is engaged in doing the master's business. In the case of Cosgrove v. Ogden, 49 N. Y. 255, Judge Grover says:

"The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master, but whether it was done in the prosecution of the business that the servant was employed by the master to do. If the owner of a business employs a servant to remove the roof from his house, and directs him to throw the materials upon his lot where no one would be endangered, and the servant, disregarding the direction, should carelessly throw them into the street, causing an injury to a passenger, the master would be responsible therefor, although done in violation of his instructions, because it was done in the business of the master."

And this was approved by the court of appeals in Ochsenbein v. Shapley, 85 N. Y. 220, and in Morris v. Brown, 111 N. Y. 328, 18 N. E. 722.

Upon the undisputed facts, therefore, the defendant the Tribune Association was liable for the injuries occasioned by the act of its employé, Glennon; and, assuming that it was error to admit the testimony as to the former trespass, such error was harmless.

I agree, however, with Mr. Justice PATTERSON that the instruction to the jury to disregard the testimony cured any error in its admission. There is no particular efficacy in the words, "the testimony is stricken out," and, to accomplish that result, it is not

necessary to use that formula. Holmes v. Moffat, 120 N. Y. 159, 24 N. E. 275. It was necessary to have the jury clearly understand that the evidence was not in the case, and was not to be considered by them. The defendants did not ask for any further action of the court or instruction upon the subject to the jury. The evidence was received subject to its being connected; and the court in its instruction to the jury stated that such evidence had not been so connected, and consequently should be disregarded. If the defendants had desired to have it formally stricken out, they should have made a motion to that effect, or in some way have called the attention of the court to the subject.

VAN BRUNT, P. J. (dissenting). I cannot concur in the opinion of the court in the case at bar. It is conceded that incompetent evidence was admitted over the objection of the counsel for the defendant, which was prejudicial to the defendant. But it is alleged that such error was cured because the judge instructed the jury to disregard it, at the request of the defendant's counsel. The cases of Holmes v. Moffat, 120 N. Y. 159, 24 N. E. 275, Marks v. King, 64 N. Y. 629, Platner v. Platner, 78 N. Y. 90, and Gall v. Gall, 114 N. Y. 109, 21 N. E. 106, are cited to sustain this proposition. An examination of those cases, it seems to me, shows that they do not support the claim made by the opinion. In the case of Gall v. Gall it was held that, where the court has received improper evidence in a civil action under objection and exception, it may remedy the error by striking out the evidence of its own motion; and the case is distinguished from the case of Erben v. Lorillard, 19 N. Y. 299. In that case incompetent evidence was not stricken out, although the judge in charging the jury told them to pay no attention to it,—precisely as was done in the case at bar. In the case of Platner v. Platner the evidence was admitted without objection, and it was held to be no error to deny a motion to strike it out,—a case entirely different from that presented by the record before us. In the case of Marks v. King the evidence was admitted without objection, and it was held that the proper remedy of the party in that case was to ask for instructions to the jury to disregard it,—again presenting a different question from that presented by the case at bar. In the case of Holmes v. Moffat the court held that the evidence was virtually stricken out by the charge, the judge saying:

"I withdraw it from your consideration, as I do not believe it to be proper or material evidence. * * * I think it my duty to say to you that that particular portion * * * is not before you as evidence."

The court held that, under the language used, while the judge in terms did not strike the evidence from the record, yet that which he did was equivalent thereto. But the rule laid down in the case of Erben v. Lorillard has nowhere been overruled. And the reason of the rule that the direction to a jury to disregard evidence which is part of the record is not sufficient is manifest. As the jury are bound to find their verdict from the evidence contained in the record, and in order that a judge may properly direct a jury to

disregard evidence which has been introduced, he must strike it from the record.

It seems to me clear that the authorities cited in no way support the proposition mentioned, and that the admission of the evidence in question was error. The judgment should be reversed.

McLAUGHLIN, J., concurs.